IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAYMAN LESSONS CHURCH and WELCOME BAPTIST CHURCH, INC., <br><br>    Plaintiff, <br><br>v. <br><br>METROPOLITAN GOVERNMENT OF NASHVILLE/DAVIDSON COUNTY, <br><br>    Defendant. | NO. 3:18-cv-0107 <br><br> JUDGE RICHARDSON |

# MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 52). Defendant Metropolitan Government of Nashville/Davidson County asks the Court to dismiss all claims in the Second Amended Complaint (Doc. No. 50).

# BACKGROUND

Plaintiff Layman Lessons Church and Welcome Baptist Church, Inc. ("Plaintiff") alleges that it is a religious institution registered by the IRS as a 501(c)(3) organization. Plaintiff asserts that it provides charitable and disaster relief assistance in the form of food, clothing, shelter, a mobile shower and laundry center, transportation, life skills training, and spiritual and recovery counseling to the homeless and needy in Nashville and surrounding areas. Plaintiff also asserts that it regularly provides donated food to faith-based groups in fifteen states.

This action concerns Plaintiff's use of certain property at 1455 Neelys Bend Road, Madison, Tennessee. Plaintiff claims that, as of January 3, 2018, it was owner of the property. Plaintiff contends that, at all relevant times, this property was zoned CN (Commercial Neighborhood). Plaintiff alleges that the property consists of 3,120 square feet of paved parking

adjacent to a 2,100 square foot concrete block barn-style building (the "storage barn"). This case arises from a dispute between Plaintiff and Defendant over what uses can be made of the subject property. Plaintiff claims that Defendant blatantly discriminated against Plaintiff through arbitrary and capricious enforcement of Defendant's codes, ordinances, regulations and laws. The alleged discriminatory acts include:

(1) illegal denial of Plaintiff's use of its land for any religious activities;

(2) illegal denial of Plaintiff's use of its paved parking area for mobile food pantries;

(3) illegal refusal to correct an illegal storm water pipe that flooded Plaintiff's storage barn on the property;

(4) preparation and use of a fraudulent 2017 Inspector Report recommending demolition of Plaintiff's storage barn;

(5) denial of Plaintiff's legal right to make minor repairs to its storage barn with volunteer labor and donated materials;

(6) illegal refusal to implement a May 2, 2018 final ruling of the Property Standards Board to allow Plaintiff to make minor repairs to the storage barn;

(7) fabrication of a non-existent "blue-line stream" on Plaintiff's property to justify a Stop Work Order from Defendant's Storm Water Department to prevent use of the property;

(8) illegal and retaliatory issuance of fraudulent Stop Work Orders with full knowledge that no actions were being conducted in violation of any code, ordinance or regulation;

(9) retaliatory tortious interference with Plaintiff's existing contract with a landlord to conduct religious activities, operate mobile food pantries and mobile showers, and provide laundry services for the homeless; and

2

(10) arbitrary and capricious enforcement of Defendant's codes, ordinances and regulations against Plaintiff and not against other properties in the same community without just cause or reason. Doc. No. 50.

Plaintiff alleges that Defendant violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); the First and Fourteenth Amendments; 42 U.S.C. §§ 1985 and 1986; and Tennessee's Religious Freedom Restoration Act, Tenn. Code Ann. § 4-1-407, *et seq.* Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees and costs.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely <u>consistent</u> with the defendant's liability do not satisfy the claimant's burden, as

3

mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## **RLUIPA**

RLUIPA provides that no government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on the person, assembly or institution is in furtherance of a compelling government interest and is

the least restrictive means of furthering that compelling government interest. 42 U.S.C. § 2000cc(a). Count I of the Second Amended Complaint alleges a violation of this provision.

In addition, RLUIPA provides that no government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination. 42 U.S.C. § 2000cc(b)(2). Count II of the Second Amended Complaint alleges a violation of this provision.

RLUIPA also provides that no government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1). Count III of the Second Amended Complaint alleges a violation of this provision.

Finally, RLUIPA states that no government shall impose or implement a land use regulation that totally excludes religious assemblies from a jurisdiction or unreasonably limits religious assemblies, institutions or structures within a jurisdiction. 42 U.S.C. § 2000cc(b)(3). Count IV of the Second Amended Complaint alleges a violation of this provision.

"Land use regulation" is defined as a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land). 42 U.S.C. § 2000cc-5(5). RLUIPA provides that its terms shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of the Act and the Constitution. 42 U.S.C. § 2000cc-3(g). The statute expressly applies in situations in which the substantial burden is imposed by the implementation of a land use regulation or system of land use regulations, under which a government makes (or has in place formal or informal procedures or practices that permit the government to make) individualized assessments of the proposed uses for the property involved. 42 U.S.C. § 2000cc(a)(2)(C). Here, there is no dispute that Defendant

5

implements land use regulations under which it may make individualized assessments of the proposed uses for property.

Defendant argues that RLUIPA applies only to zoning regulations, not building regulations. Defendant claims that Plaintiff has no "live controversy" involving Defendant's zoning laws and that Plaintiff's RLUIPA claims are moot because, on May 21, 2018, Defendant's Zoning Administrator granted Plaintiff's request to use the property for religious purposes. Plaintiff, on the other hand, argues that from December of 2017 until at least the May 2018 meeting with the Zoning Administrator, Plaintiff was not allowed to use the property for the religious activity of storing and disseminating donated goods. Plaintiff seeks retroaction relief for that alleged past misconduct. Plaintiff also argues that, even in November of 2018, after the pending motions were filed, Defendant was still insisting that Plaintiff complete more work on the storage barn in addition to what was previously required.

Plaintiff contends that Defendant relied on zoning regulations with regard to its pursuit of a demolition order for the storage barn, stop work orders, and numerous delays in allowing Plaintiff to take in order to repair the storage barn—all in an attempt to prevent Plaintiff from using its property. The Second Amended Complaint alleges that Plaintiff attended numerous meetings of the Property Standards Board (February 7, 2018; March 7, 2018; April 8, 2018; and May 2, 2018) in attempts to get the Board to reduce the demolition order to a repair order and issue a permit, if required, for Plaintiff to make those repairs. Plaintiff contends that Defendant kept deferring action on Plaintiff's request and demanding additional information, changing the requirements or, as Plaintiff states, "moving the goalposts."

Moreover, Plaintiff alleges that Defendant, in order to delay or prevent Plaintiff's free exercise of religion, erroneously asserted that an environmentally-protected stream existed on the

6

property, erroneously fined Plaintiff for "grading without a permit," and issued erroneous stop work orders once Plaintiff started repairs. Plaintiff claims that Defendant refused to stop illegal, misdirected, storm water that flooded onto Plaintiff's property through a drainage system that violated Defendant's own laws.

In short, Plaintiff has alleged misuse of both zoning and non-zoning regulations by Defendant to prevent Plaintiff's use of the property. Where the record supports the inference that a locality disingenuously used its procedures to obstruct and ultimately deny a plaintiff's religious building, courts decline to insulate the municipality from liability with regard to its decisions on zoning issues simply because it decided them under the rubric of an ostensibly non-zoning process. *United States v. County of Culpepper, Virginia*, 245 F. Supp. 3d 758, 768 (W.D. Va. 2017) Even though no building was completely denied here, the Court finds—as did Judge Wiseman of this Court in an earlier case involving Plaintiff and a different municipality—that Defendant's alleged attempted uses of procedures fall within the definition of "land use regulation" insofar as it constituted the application of a proposed law to restrict Plaintiff's use or development of land in which it had a leasehold interest. *Layman Lessons, Inc. v. City of Millersville, Tenn.*, 636 F. Supp. 2d 620, 646 (M.D. Tenn. 2008). Thus, the Court finds that RLUIPA applies in this case.

As noted, Defendant also argues that Plaintiff's RLUIPA claims are moot. A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Wilson v. Gordon*, 822 F.3d 934, 941-42 (6th Cir. 2016); *Whipple v. Millay*, No. 1:14-cv-00117, 2017 WL 4176339, at * 3 (M.D. Tenn. Sept. 21, 2017). To determine whether the case is moot, a court considers whether the relief sought would, if granted, make a difference to the legal interests of the parties. *Id*. Parties lack a legally cognizable interest in a case's outcome when events make it impossible for the court to grant any effectual relief whatever to a prevailing

party. *Amber Jones v. William Haynes*, 736 F. App'x 585, 588-589 (6th Cir. 2018) (citing *Fialka-Feldman v. Oakland Univ. Bd of Trs.,* 639 F.3d 711, 713 (6th Cir. 2011)).

A case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violations. *Campbell v. PMI Food Equip. Group, Inc.* 509 F.3d 776, 781 (6th Cir. 2007). There is no evidence before the Court as to what has occurred between these parties since the pending Motions to Dismiss were filed; but based on the alleged repeated problems Plaintiff has encountered and the other allegations of the Second Amended Complaint, Plaintiff has sufficiently alleged that Defendant has continued to obstruct Plaintiff's religious activities in violation of RLUIPA. Defendant has not shown that the alleged misconduct reasonably cannot be expected to recur or that interim events or relief have completely eradicated the effects of the alleged violations. For example, Defendant might again attempt to stop work on the storage barn or reinstate a demolition order, for what Plaintiff might claim are discriminatory reasons.[1]

Moreover, Plaintiff's claim is not moot because, in addition to declaratory and injunctive relief, Plaintiff seeks monetary relief for Defendant's actions in the past. If a plaintiff's complaint includes a claim for damages, that claim preserves the plaintiff's backward-looking right to preserve a live case or controversy over the dispute. *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 581 (6th Cir. 2012). Plaintiff seeks a declaration that Defendant's actions violated RLUIPA at the time those actions were taken and that Plaintiff suffered damages as a result of those actions. Even if the Zoning Administrator mooted one of Plaintiff's claims at the May 2018

---

[1] Voluntary cessation of a challenged practice does not necessarily deprive a federal court of its power to determine the legality of the practice. *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

meeting, Plaintiff asserts that Defendant has used, and is still using, other land use regulations to continue to injure Plaintiff in violation of RLUIPA. It is possible for the Court to grant effectual relief to Plaintiff through damages, including attorney's fees. Thus, Plaintiff's RLUIPA claim is not moot.

With regard to the RLUIPA provisions cited in Counts I, II, III and IV,[2] Defendant refers, in a footnote, to the "substantial burden" inquiry, the "equal terms" inquiry, and the "exclusion and limits" inquiry. Defendant asserts that Plaintiff has not articulated a "substantial burden" on its religious exercise where it purchased the property knowing it was zoned CN, where it waited four months before requesting an accommodation, and where its request was granted four days later. Plaintiff contends that the substantial burden is Plaintiff's not being able to use its property to conduct religious activities of storing and disseminating donated goods.

RLUIPA does not define "substantial burden." *Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996, 1001 (6th Cir. 2017). Not just any imposition on religious exercise will constitute a violation of RLUIPA; the burden must have some degree of severity to be considered "substantial." *Id*. at 1003. The court in *Living Water Church of God v. Charter Township of Meridian*, 258 F. App'x 729 (6th Cir. 2007), while explicitly declining to set a "bright line test," found the following consideration helpful: though the government action may make religious exercise more expensive or difficult, does the government action place substantial

---

[2] As explained above, Plaintiff has alleged that Defendant's actions violated specific provisions of RLUIPA by placing a "substantial burden" on Plaintiff's religious exercise (Count I), by discriminating against Plaintiff based on religion (Count II), by treating Plaintiff on less than equal terms with a nonreligious assembly or institution (Count III), and through excluding or unreasonably limiting Plaintiff's assemblies, institutions or structure within a jurisdiction (Count IV).

pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion? *Id*. at 737.[3]

The Second Amended Complaint asserts ways that Defendant allegedly burdened Plaintiff's religious exercise beyond the circumstances eventually addressed by the Zoning Administrator's alleged accommodation. For example, Plaintiff alleges that Defendant's action delayed (and in some cases prevented) Plaintiff from carrying out its religious activities by obstructing its ability to store and distribute donated goods to the poor and homeless in Nashville. Plaintiff contends that Defendant's failures to act concerning storm water regulations caused damage to Plaintiff's storage barn, resulting not only in delays, but also in expenses. Plaintiff claims that without the use of its property, it is unable to fulfill its religious mission to minister to the needs of those whom it serves.

Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, that the actions of Defendant—including, but not limited to, Defendant's issuance of demolition orders, stop work orders, and storm water orders regarding the storage barn; Defendant's insisting that Plaintiff complete additional repair work and get additional permits than what was previously required; Defendant's erroneously asserting that a protected stream existed on the property; and Defendant's erroneously fining Plaintiff for "grading without a permit"—created a "substantial burden" on its free exercise of religion, in violation of RLUIPA.

Plaintiff also alleges that Defendant *discriminated* against Plaintiff based on its religion. Defendant does not mention this discrimination claim. Plaintiff has alleged that it was treated

---

[3] Other factors include whether the burden places significant pressure on an institutional plaintiff to modify its behavior, whether the religious institution has a feasible alternative location from which to carry on its mission, and whether the religious institution will suffer substantial delay, uncertainty, and expense because of the imposition of the regulation. *Livingston*, 858 F.3d at 1004.

differently than other property owners because it is a religious organization. For example, Plaintiff asserts that Defendant required Plaintiff to remove its tractor-trailers bearing signage of "Layman Lessons Church" from property on Dickerson Road while not requiring the removal of numerous trailers and portable wooden buildings that—although actually owned by Plaintiff—were unmarked and thus ostensibly neither religious nor owned by Plaintiff. Doc. No. 50 at ¶ 49. Plaintiff alleges that Defendant's inspectors ignored glaring code violations of Plaintiff's neighbors while strictly enforcing, even fabricating, alleged violations against Plaintiff. *Id.* at ¶¶ 64, 66-67, 71, 77, 80, 83 and 86. Accepting the allegations of the Second Amended Complaint as true, Plaintiff has sufficiently alleged, for purposes of a motion to dismiss, that it was treated differently from non-religious property owners (Count II). In addition, for the same reasons, Plaintiff has sufficiently alleged that it was treated on less than equal terms with a non-religious institution (Count III).

Plaintiff has alleged no facts, however, to support a claim that it was completely excluded from Nashville/Davidson County by a land use regulation, and Count IV, based upon 42 U.S.C. § 2000cc(b)(3) will be dismissed. It is one thing for Plaintiff to claim that it was substantially burdened by Defendant's actions; it is quite another to claim that Plaintiff was completely excluded from Nashville/Davidson County.

Thus, Plaintiff has sufficiently alleged a claim under 42 U.S.C. § 2000cc(a) and (b)(1) and (2), but not under § 2000cc(b)(3). Whether the actions Plaintiff alleges actually violate RLUIPA is a question for another day, but (except as to Count IV) Plaintiff has sufficiently alleged violations of 42 U.S.C. § 2000cc, and those claims are not moot.

Therefore, Defendant's Motion to Dismiss Plaintiff's RLUIPA claims will be granted in part and denied in part. Plaintiff's RLUIPA claims in Count IV will be dismissed.

# SECTION 1983

Plaintiff also alleges that Defendant has violated Plaintiff's First Amendment rights to the free exercise of religion and its Fourteenth Amendment rights to equal protection. Plaintiff brings this constitutional claim pursuant to 42 U.S.C. § 1983, which provides a private right of action against anyone who subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights or privileges secured by the Constitution and laws of the United States. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The person suing under this statute must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law. *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014); *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 903 (W.D. Tenn. 2016).

Although a municipality is a "person" under Section 1983 and can be held liable for constitutional injuries for which it is responsible, a municipality is liable for only its own wrongdoing, not the wrongdoings of its employees. *Morgan v. Fairfield Cty, Ohio*, 903 F.3d 553, 565 (6th Cir. 2018). To establish municipal liability under Section 1983, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac Cty*, 606 F.3d 240, 256 (6th Cir. 2010); *Howell v. McCormick,* No. 3-15-cv-1428, 2017 WL 6359885, at * 7 (M.D. Tenn. Dec. 13, 2017). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from implementation of the municipality's official policies or established customs. *Id*.

Defendant argues that Plaintiff has identified no official policy, custom or practice that allegedly caused its harm. Plaintiff contends that Defendant has attempted to use every conceivable rule and regulation to stop Plaintiff's exercise of religion, in a concerted effort involving numerous

of Defendant's officials, thus reasonably reflecting a custom, policy and/or practice of Defendant to interfere with those who choose to exercise their religious beliefs in a manner that is not agreeable to Defendant. Plaintiff has not cited any other instance in which Defendant allegedly burdened the free exercise rights of a religious institution through land use regulations or burdened the rights of any person exercising religious beliefs in a manner that was not agreeable to Defendant. Plaintiff must allege facts to show a custom, practice or policy of burdening the free exercise rights of a religious institution in this way, not just that Defendant permitted such an alleged burden in Plaintiff's particular case. *Cross v. Metropolitan Gov't of Nashville/Davidson Cty.*, No. 3-12-1109, 2013 WL 1899169, at * 3 (M.D. Tenn. May 7, 2013). Simply arguing that multiple of Defendant's officials created obstacles to *Plaintiff's* free exercise of religion does not indicate a policy, custom or practice sufficient for municipal liability. *Id.*

Even viewing the Second Amended Complaint in the light most favorable to Plaintiff, Plaintiff has alleged no specific policy, custom or practice sufficient to hold Defendant liable under these facts. And, since there is no *respondeat superior* liability of Defendant for the acts or omissions of its employees, Plaintiff's Section 1983 claims against Defendant (Counts V and VI) will be dismissed.

## SECTIONS 1985(3) AND 1986

Count VII alleges that Defendant conspired to interfere with Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1985(3). In order to state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must plead and prove: (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury or deprivation of a right or privilege. *Kirschke v. Maclaren*, No. 18-1606, 2018 WL 6177162, at * 2 (6th Cir. Nov.

8, 2018). The plaintiff must also show the conspiracy was motivated by racial or another class-based animus. *Kuerbitz v. Meisner*, No. 17-2284, 2018 WL 5310762, at * 3 (6th Cir. July 11, 2018).[4]

Just as with Section 1983, r*espondeat superior* is not a basis for municipal liability under Section 1985. *Jefferson v. Corizon Healthcare Providers,* No. 3:12-0988, 2013 WL 6909969, at * 3 (M.D. Tenn. Dec. 30, 2013); *Easterling v. Sessions*, Case No. 3:16-cv-375, 2017 WL 2463393, at * 2 (S.D. Ohio June 7, 2017); *Edmonds v. Dillin*, 485 F. Supp. 722, 728-29 (S.D. Ohio 1980). In order for a city to be liable under Section 1985, it must be shown that the city as an entity, through policy or custom, engaged in a conspiracy. *Id.* Plaintiff has failed to state a claim under Section 1985 for the same reasons he fails to state a claim under Section 1983.

Plaintiff's Section 1985 claim (Count VII) is subject to dismissal for an additional reason. Under the "intra-corporate conspiracy" theory, there is no conspiracy liability when the claim is based upon the interactions of two or more agents of the same entity. *Hines v. Town of Vonore*, 912 F. Supp. 2d 628, 654 (E.D. Tenn. 2012). This doctrine applies to both government entities and corporations. *Id.* Plaintiff does not allege a conspiracy between Defendant or Defendant's employees and anyone else except Beck, and Plaintiff fails to sufficiently allege a conspiracy; Plaintiff has failed to allege any actual factual matter indicating a tacit or express agreement between Beck and Defendant (or Defendant's employees) or an act in furtherance of a conspiracy with Beck.[5]

---

[4] The Court will assume here that Plaintiff can satisfy this requirement by alleging religious-based animus.

[5] The Court is aware that the Second Amended Complaint alleges that Defendant conspired with Nelson Andrew Beck, also named as a Defendant in the Caption. There is no evidence that Beck has been served, and no counsel for Beck has entered an appearance. The only alleged actions by Beck are simply that he owned the adjacent property and had his property "down-zoned" from

14

Count VIII alleges that Defendant and Beck violated 42 U.S.C. § 1986. Section 1986 provides a cause of action against persons who have knowledge of and who fail to prevent or aid in preventing the commission of a civil rights conspiracy violation, pursuant to Section 1985. *Cheatham v. Harris*, No. 3:10-CV-541, 2012 WL 2873682, at * 5 (E.D. Tenn. July 12, 2012). Thus, to state a cause of action under Section 1986, a plaintiff must also state a cause of action under Section 1985. *Id.*; *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 952, 969 (S.D. Ohio 2007). Because Plaintiff has not sufficiently stated a claim for violation of Section 1985, his Section 1986 claim (Count VIII) will be dismissed as well.

In any event, this claim is asserted against only the two alleged conspirators themselves, who surely cannot be liable for failing to prevent their *own* conspiracy. *See Maglaya v. Kumiga*, No. 14-cv-3619, 2015 WL 4624884, at * 11 (N.D. Ill. Aug. 3, 2015) ("§ 1986 . . . . allows plaintiffs to extend conspiratorial liability to those *outside of* the conspiracy") (emphasis added). At the very least, asserting a Section 1986 claim against the alleged conspirators in addition to the Section 1985 claim adds "'needless complexity' to the case; the [§ 1986] claim is 'superfluous.'" *Id.* (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). The Section 1986 claim, in summary, is both invalid and superfluous, in light of the existence and disposition of the Section 1983 claim.

## **TENNESSEE RELIGIOUS FREEDOM RESTORATION ACT**

Tennessee's Religious Freedom Restoration Act ("TRFRA") provides that no governmental entity shall substantially burden a person's free exercise of religion unless it

---

Commercial to Residential (¶¶ 9 and 15). Although Plaintiff alleges that Defendant refused to stop flooding from Beck's property onto Plaintiff's property (¶ 79) and one of Defendant's officials said the driving force behind the "attack" on Plaintiff's property was the half-million-dollar homes on Beck's property (¶ 31), those are not alleged actions by Beck.

demonstrates that application of the burden to the person is (1) essential to further a compelling governmental interest and (2) the least restrictive means of furthering that compelling governmental interest. Tenn. Code Ann. § 4-1-407(c). "Substantially burden" is defined in TRFRA as "to inhibit or curtail religiously motivated practice. Tenn. Code Ann. § 4-1-407(a)(7).

Defendant argues that Plaintiff has alleged no facts to show that it has been substantially burdened. Again relying on the Zoning Administrator's alleged accommodation of May 2018, Defendant contends that the mobile storage units are now allowed on the property and the storage barn may also be used once it is made safe. Therefore, Defendant asserts, Plaintiff has not been substantially burdened.[6] The Court has addressed "substantial burden" with regard to the RLUIPA claim, above.

As noted, Plaintiff claims that from December 21, 2017, until at least May 21, 2018, Plaintiff was not allowed to use the property for its religious activities, such as storing and distributing donated goods to the poor and homeless in Nashville. Plaintiff seeks damages retroactively for that "substantial burden." Plaintiff also maintains that Defendant continues to prevent Plaintiff from using its storage barn. The Court finds that Plaintiff has sufficiently alleged a substantial burden for a claim for violation of TRFRA (Count IX).

## **CONCLUSION**

For the reasons explained herein, Defendant's Motion to Dismiss will be granted in part and denied in part. Plaintiff's claims for violation of 42 U.S.C. § 2000cc(b)(3), found in Count IV, will be dismissed. Plaintiff's constitutional claims brought pursuant to Sections 1983, 1985(3) and

---

[6] Defendant also argues that its permitting and inspection process is the least restrictive means of furthering the compelling governmental interest of requiring all buildings in Davidson County to be safe. The Court cannot determine this issue on the current record, where it must accept the allegations of Plaintiff's Second Amended Complaint as true.

1986, found in Counts V, VI, VII and VIII, will be dismissed. Thus, Plaintiff's remaining claims are Counts I, II, III and IX.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE